UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS OGORZELEC,

    Plaintiff,

v.                                      Case No:   8:16-cv-1538-T-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Thomas Ogorzelec's Complaint (Doc. 1) filed on June 13, 2016. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review

#### A. Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other

substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

  **B.**  **Procedural History**

  On January 22, 2013, Plaintiff filed an application for disability insurance benefits ("DIB"). (Tr. at 114, 129, 189-90). Plaintiff asserted an onset date of August 25, 2011 in his Application. (*Id.* at 189). As to the onset date, the ALJ determined the following:

> The undersigned notes that the claimant has a previous adjudication pertaining to the claimant's alleged onset date through June 24, 2009. Based on this previous adjudication, the undersigned finds that the claimant's application for a period of disability and disability insurance benefits is barred under the doctrine of res judicata through the date of that decision. The claimant has not presented any new and material evidence to warrant a reopening of that determination, as explained more fully below. Therefore, that prior determination dated June 24, 2009 is the final decision of the Commissioner and remains in effect. Consequently, the adjudication herein will continue as of June 25, 2009.

(*Id.* at 12). Thus, the ALJ amended the alleged onset date to be June 25, 2009. Plaintiff's applications were denied initially on May 17, 2013, and on reconsideration on June 24, 2013. (*Id*. at 114, 129). A hearing was held before Administrative Law Judge ("ALJ") Richard P. Gartner on September 18, 2014. (*Id*. at 28-82). The ALJ issued an unfavorable decision on February 2, 2015. (*Id*. at 12-21). The ALJ found Plaintiff not to be under a disability from June 25, 2009 through June 30, 2009. (*Id*. at 21).

  On April 20, 2016, the Appeals Council denied Plaintiff's request for review. (*Id*. at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on June 13, 2016. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 14).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements on June 30, 2009. (Tr. at 14). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from June 25, 2009 through his date last insured of June 30, 2009. (*Id.*). At step two, the ALJ found that through the date last insured, Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease; osteoarthritis of the patella; and depressive reaction (20 C.F.R. § 404.1520(c)). (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.* at 15).

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

At step four, the ALJ found the following:

After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) except requires an option to alternate between sitting and standing at will after thirty minutes; limited to lifting and carrying 10 pounds frequently and 20 pounds occasionally; occasional sitting, standing and walking for six hours in an eight[-]hour work day; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no exposure to dangerous machinery or unprotected heights; requires brief access to a restroom break every two to two[-]and[-]a[-]half hours; limited to occasional pushing and pulling with the upper and lower bilateral extremities to include the operation of hand levers and foot pedals; limited to simple, routine and repetitive tasks not performed in a fast pace production environment involving only simple work related decisions and in general only few workplace changes; and occasional interaction with the general public.

(*Id.* at 16-17).

The ALJ determined that as of the date last insured, Plaintiff was unable to perform any past relevant work. (*Id.* at 19). Through the date last insured, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and found that there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (*Id.* at 20). The ALJ noted that the vocational expert identified three jobs that Plaintiff was able to perform, namely: (1) addresser, DOT # 209.587-010, sedentary, unskilled, SVP of two; (2) inspector, DOT # 700.687-038, sedentary, unskilled, SVP of two; and (3) telephone solicitor, DOT # 299.357-014, sedentary, unskilled, SVP two. (*Id.*).[2] The ALJ concluded that Plaintiff was not under a disability at any time from June 25, 2009 through June 30, 2009, the date last insured. (*Id.* at 21).

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises two issues. As stated by Plaintiff they are:

(1) The ALJ's decision was in error in failing to find Plaintiff had the severe impairment of palindromic rheumatism prior to his date last insured; and

(2) Because the ALJ failed to find that Plaintiff had the condition of palindromic rheumatism prior to his date last insure, the Eleventh Circuit Pain Standard was not correctly applied.

(Doc. 21 at 5, 7). The Court addresses each issue in turn.

A. **Whether the ALJ Erred at Step Two**

Plaintiff argues that the ALJ erred in failing to find that Plaintiff had the severe impairment of palindromic rheumatism at step two of the sequential evaluation. (Doc. 21 at 5). The Commission argues in response that ALJ properly determined Plaintiff's severe impairments at step two. (Doc. 22 at 4).

At step two of the sequential evaluation, the severity of a claimants impairments is analyzed. At this step, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Rather, the ALJ is required to consider a claimant's impairments in combination, whether severe or not. *Id.*

> A severe impairment is an impairment or combination thereof that significantly limits the claimant's physical or mental ability to do basic work activities. . . . The

6

> determination of whether the claimant suffers from a severe impairment acts as a filter. . . . Thus, while a claim is denied if the claimant does not suffer from a severe impairment, the finding of any severe impairment, regardless of whether it qualifies as a disability or results from a single impairment or combination thereof, is sufficient to satisfy the second step of the SSA's sequential analysis. . . . Nonetheless, beyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling.

*Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (internal citations omitted). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In this case, the ALJ found that at step two, the Plaintiff had the following severe impairments: lumbar degenerative disc disease, osteoarthritis of the patella; and depressive reaction. (Tr. at 14). Thus, the step two analysis is satisfied and any error in failing to identify palindromic rheumatism was harmless as long as the ALJ considered all of Plaintiff's impairments at the later steps in the decision.

Normally, the Court would then determine whether the ALJ had considered Plaintiff's palindromic rheumatism in combination with Plaintiff's other impairments in determining Plaintiff's RFC. In this case, however, as a threshold matter, the Court must consider whether objective medical evidence supports Plaintiff's diagnosis of palindromic rheumatism during the relevant time period from Plaintiff's onset date of June 25, 2009 through Plaintiff's date last insured of June 30, 2009 – a six (6) day period. For disability insurance claims, a claimant must demonstrate a disability on or before the date last insured. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Plaintiff asserts that in a letter dated September 22, 2014, A. Katherine Frailing, D.O., Plaintiff's primary care physician since November 2000, explained that Plaintiff was finally

diagnosed recently with palindromic rheumatism that correlated to his symptoms of pain, swelling, and weakness. (*Id.*). Plaintiff argues that, "[i]mplicit in this letter is an opinion that the claimant had been complaining of symptoms, which could not be explained through objective testing such as MRIs, x-rays[,] and labs, and that the symptoms have been present for many years, and that the claimant probably had the condition of palindromic rheumatism all these years, but simply was not diagnosed." (*Id.* at 6). Plaintiff cites to medical records indicating that Plaintiff complained of knee, back and foot pain since 2007. (*Id.*). In sum, Plaintiff argues that under the totality of the circumstances, including (1) Plaintiff's complaints and the lack of objective evidence to explain Plaintiff's pain symptoms, (2) a later diagnosis of palindromic rheumatism, and (3) the statement from his doctor, "suggests that this condition was in existence prior to the Plaintiff's date last insured and prior to the prior decision." (*Id.* at 6-7).

The Commissioner maintains that the ALJ correctly noted that Plaintiff was first diagnosed with palindromic rheumatism on March 13, 2014, more than four (4) years after the date last insured. (Doc. 22 at 4). The Commissioner also maintains that the ALJ correctly stated that the record is void of objective medical evidence to establish this impairment during the relevant period. (*Id.*). Further, the Commissioner contends that Dr. Frailing's letter does not provide any specific dates as to the onset of Plaintiff's palindromic rheumatism. (*Id.* at 5-6). Finally, the Commissioner argues that Plaintiff failed to meet his burden to demonstrate he was disabled between June 25, 2009 and June 30, 2009.

The medical records of record relating to the first diagnosis of palindromic rheumatism are as follows. On March 13, 2014, Plaintiff saw Steven Fink, D.O. (Tr. at 695-97). Plaintiff complained that in the four (4) to five (5) months prior to his visit, he had developed episodic swelling in his joints. (*Id.* at 695). Plaintiff described the problem as periodically having random

8

joints swell, causing pain, and then returning to normal after anywhere from one (1) to two (2) days. (*Id.*). Dr. Fink prescribed medication for Plaintiff. (*Id.* at 697). On September 24, 2014, Plaintiff returned to Dr. Fink for a follow up visit. (*Id.* at 748). Plaintiff reported to Dr. Fink that for "the last several years" Plaintiff had pain and stiffness in his hands and found it difficult to work due to the paresthesias, stiffness, pain, and swelling. (*Id.*). Dr. Fink stated, "[i]t is plausible that the early hand symptomology that [Plaintiff] was experiencing may have been an early inflammatory arthropathy." (*Id.*)

> On September 22, 2014, Dr. Frailing wrote the following letter:
>
> Thomas Ogorzelec is a patient with the Bay Pines VA Healthcare System. I have been his designated primary care provider since November 2000. Mr. Ogorzelec has had multiple tests for pain and stiffness of his extremities including MRI's, x-rays and labs. He was finally diagnosed in the recent months with palindromic rheumatism and is being managed by a rheumatologist. The symptoms he has been having of pain, swelling, weakness correlate with his diagnosis.

(*Id.* at 747).

The ALJ specifically acknowledged Plaintiff's contention that he suffered from palindromic rheumatism. The ALJ determined:

> The claimant and his representative have alleged that the claimant also had palindromic rheumatism. However, the evidence of record indicates that this condition was not diagnosed until about five years after the date last insured in 2014. While the claimant argues that he exhibited signs and symptoms of this disorder in 2009, the record is simply void of objective medical laboratory or clinical findings to establish the existence of such a medically determinable impairment at times relevant to this decision.

(*Id.* at 15). The ALJ referenced Dr. Frailing's letter noting that even though Dr. Frailing was Plaintiff's primary care physician since 2000, her letter did not indicate that Plaintiff's palindromic rheumatism existed prior to the date last insured. (*Id.*). Overall, the ALJ afforded little weight to the argument that Plaintiff suffered from palindromic rheumatism during the relevant time period. (*Id.* at 18).

9

Upon consideration of these medical records and opinions as well as the other medical records in evidence, the Court finds that Plaintiff has not demonstrated that he was diagnosed with palindromic rheumatism or established the existence of such a medically determinable impairment during the relevant time period of June 25, 2009 through June 30, 2009. Dr. Fink first diagnosed Plaintiff with palindromic rheumatism on March 13, 2014, more than four (4) years after the relevant time period. (*See* Tr. at 695-97). At that visit, Plaintiff reported that in the prior four (4) to five (5) months, he had developed episodic joint swelling. (*Id.* at 695). This time period does not fall within the relevant time period in this case. Later in September 2014, Plaintiff reported to Dr. Fink that for the last several years, Plaintiff suffered from swelling, stiffness, and pain in various joints. (*Id.* at 748). Even if "several years" could possibly be construed to fall within the relevant time period, Plaintiff's report is not substantiated by any objective medical evidence during the relevant time period. Further, although Plaintiff relies on Dr. Frailing's letter, her letter only indicates that Plaintiff was "finally" diagnosed with palindromic rheumatism, but does not indicate with any specificity when Plaintiff's symptoms began.

The Court finds that the ALJ's determination that Plaintiff was not diagnosed with palindromic rheumatism or established the existence of such a medically determinable impairment during the relevant time period is supported by substantial evidence. The Court further finds that the ALJ did not err in failing to find Plaintiff's palindromic rheumatism severe at step two of the sequential evaluation.

In one sentence and without citation to any legal authority, Plaintiff raises the issue that Dr. Frailing's letter suggests that Plaintiff suffered from palindromic rheumatism prior to June 30, 2009 and, at a minimum, the ALJ should have re-contacted Dr. Frailing for clarification of

her opinion. (Doc. 21 at 6). The Commissioner counters that Plaintiff failed to show any actual ambiguity or conflict in the record to justify further development of the record. (Doc. 22 at 6).

In completing the five-step sequential process, the ALJ has a duty to develop a full and fair record, whether the claimant is represented by counsel or not. *Mosley v. Acting Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 741 (11th Cir. 2015) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). Nevertheless, the claimant bears the burden of proving that he is disabled and, accordingly, is responsible for producing evidence to support his claim. *Id.* Moreover, remand is required only when:

> "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 2015. In other words, "there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Id.* Prejudice requires a showing that "the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)

*Id.* at 742.

Here, the record is clear and does not contain any evidentiary gaps. Plaintiff was diagnosed with palindromic rheumatism in March 2014, over four years after the date last insured. Based upon Plaintiff's subjective reporting – at most – both Dr. Fink and Dr. Frailing suggest that Plaintiff may have suffered from palindromic rheumatism for some period of time prior to his official diagnosis date, but no records or opinions indicate that Plaintiff suffered from palindromic rheumatism over four (4) years prior to his diagnosis. The administrative record contains treatment records from the relevant time period and Plaintiff fails to demonstrate that these records document any diagnosis of or that Plaintiff suffered from palindromic rheumatism between June 25 and June 30, 2009. The Court finds that the ALJ did not err in failing to re-

11

contact Dr. Frailing for clarification of her opinion and the ALJ's decision is supported by substantial evidence as to this issue.

## B. Whether the ALJ Erred in Applying the Pain Standard

Plaintiff contends that, assuming Plaintiff had the undiagnosed condition of palindromic rheumatism as of the date last insured, the ALJ erred in failing to evaluate Plaintiff's pain symptoms under the Eleventh Circuit's pain standard. (Doc. 21 at 7). The Court determined above that Plaintiff failed to establish that he suffered from palindromic rheumatism during the relevant time period and, thus, the ALJ did not err in failing to consider this condition when applying the Eleventh Circuit's pain standard. Moreover, substantial evidence supports the ALJ's finding that even though Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in the decision. (Tr. at 17).

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 27, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties